$120.00 MC #191
SUMMONS ISSUED

John H. Tarlow
Tom W. Stonecipher
Tarlow Stonecipher & Steele, PLLC
1705 West College Street
Bozeman, Montana 59715-4913
Telephone:  (406) 586-9714
Facsimile:   (406) 586-9720

**FILED**

JAN 2 0 2009
Bundy K. Bailey
Clerk of Court
By: Deputy Clerk

ATTORNEYS FOR PLAINTIFF

MONTANA FIFTH JUDICIAL DISTRICT COURT, MADISON COUNTY

CV-09-12-BU-RFC

| | |
|---|---|
| CASA CAPTIVA, LLC, a Montana limited liability company; and BRUCE ERICKSON, <br><br>  Plaintiffs, <br><br> EDRA D. BLIXSETH, an individual; BLX GROUP, INC., an Oregon corporation, formerly known as Blixseth Group, Inc; and LINER YANKELEVITZ SUNSHINE & REGENSTREIF LLP, a California limited liability partnership, <br><br>  Defendants. | Cause No. **DV-29-09-6** <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs complain and allege against Defendants as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Casa Captiva LLC ("Casa Captiva") is a limited liability company organized and existing under the laws of the state of Montana, with its offices in Bozeman, Montana.

2.      Plaintiff Bruce Erickson ("Erickson") is an individual who does business in Montana.

3. Defendant Edra D. Blixseth ("Blixseth") is an individual who resides in California and who regularly and consistently does substantial business in Montana.

4. Defendant BLX Group, Inc., formerly known as Blixseth Group, Inc. (hereafter collectively referred to as "BLX"), is an Oregon corporation which regularly and consistently does substantial business in Montana.

5. Defendant Liner Yankelevitz Sunshine & Regenstreif LLP ("Liner Firm") is a limited liability partnership organized and existing under the laws of the State of California. The Liner Firm regularly and consistently does substantial business in Montana and has consented to personal jurisdiction in Montana.

6. The principal activity under the agreement which is the subject matter of this action was to take place in Madison County.

7. Defendants are liable to Plaintiffs for breaches of contract and torts as set forth below.

8. This Court has jurisdiction over the parties and the subject matter of this action, and venue is proper.

## FACTS

9. Effective July 30, 2008, Plaintiffs entered into an agreement with various parties, including Blixseth and BLX. A true and correct copy of that agreement (the "Agreement") is attached hereto as Exhibit A and its terms are incorporated herein by reference.

10. In Section 2.1 of the Agreement, the Blixseth Group agreed that it ". . . does hereby grant, bargain, sell, assign, and convey . . ." to Plaintiff Casa Captiva as of July 30, 2008, a certain tract of real property located in Mexico (the "Mexican Property")

as is more particularly described in the Agreement. The parties then agreed to arrange thereafter for that conveyance to be held in trust by a Mexican notary public until the earlier of the occurrence of certain events as more particularly set forth in the Agreement.

11. During the negotiations with Plaintiffs regarding the terms of the Agreement as well as thereafter, Blixseth and BLX were represented by Defendant Liner Firm.

12. In the Agreement, BLX represented and warranted that it had good and clear title to the Mexican Property and that the property was free and clear of all liens and encumbrances of any kind or nature.

13. In the Agreement, as consideration for the conveyance of the Mexican Property to Casa Captiva, Erickson agreed to assign, transfer and convey his ownership rights in certain Montana real property ("Unit 304") to BLX.

14. Erickson thereafter performed his obligations under the Agreement and transferred his interest in Unit 304 to BLX as he had promised to do.

15. After Erickson transferred his interest in Unit 304 to BLX, BLX placed a deed of trust upon Unit 304, securing a principal indebtedness of $9,533,314.04. BLX has failed to make timely payments on the amount necessary to repay the loan secured by this deed of trust on Unit 304, and is in default.

16. BLX has failed and refused to convey the Mexican Property to Casa Captiva and to place the conveyance in trust as required by the Agreement.

17. At a time after the full execution of the Agreement, but upon a date currently unknown to Plaintiffs, and after BLX had transferred all of its right, title, and

interest in the Mexican Property to Casa Captiva, BLX granted to the Liner Firm, and the Liner Firm accepted, a consensual lien for over Three Million Dollars on the Mexican Property, which encumbers it and constitutes a cloud on the title to that property.

18. On Information and belief, Plaintiffs allege that, up to the date of this Complaint, Blixseth and BLX have advertised the Mexican Property for sale, have solicited offers to purchase the Mexican Property, and are actively attempting to sell it at a price far less than its current value, notwithstanding their conveyance of the Mexican Property to Plaintiffs and their promise to place the Mexican Property in trust as required by the Agreement.

19. Section 2.3 of the Agreement permitted BLX, by giving notice, to elect to rescind the transactions provided for in the Agreement at any time prior to July 30, 2009. Upon the giving of that notice, as required by the Agreement, the parties agreed that the rescission of the transactions provided for in the Agreement would be accomplished on or before July 31, 2009. The Agreement does not provide that the giving of a notice to accomplish such a rescission is the rescission itself.

20. On September 16, 2008, Defendants Blixseth and BLX notified Plaintiffs that they had elected to rescind the transaction contemplated by the Agreement pursuant to Section 2.3 thereof.

21. Defendants Blixseth and BLX have thereafter asserted that they are not required to actually execute the rescission and restore the parties to the status quo until July 31, 2009.

## CLAIM ONE
### (Rescission Due to Breach of Contract)

22.     Defendant BLX has breached the Agreement by failing to place in trust the Mexican Property conveyed to Plaintiff Casa Captiva as agreed and by granting the Defendant Liner Firm a lien on the Mexican Property after conveying all of its ownership interest in the Mexican Property to Casa Captiva.

23.     The actions and inactions of Defendant BLX and Defendant Liner Firm have caused a failure of consideration in whole or in part with respect to the promises made by BLX and Blixseth under the Agreement.

24.     Because of Defendants BLX and Liner Firm's actions, and without any fault of Plaintiff Casa Captiva, Plaintiff Casa Captiva is unable to return the Mexican Property to Defendants in the same form and condition as it was intended to be when it was promised as consideration for Plaintiffs pursuant to the Agreement. Plaintiff Casa Captiva is entitled to accomplish the rescission of this Agreement by returning to Defendant BLX the Mexican Property in the condition in which it currently exists if Defendants can return Unit 304 to Plaintiffs completely free and clear of all liens and encumbrances.

25.     The Mexican Property, as real estate, has a unique value to Plaintiffs, and Plaintiffs cannot be made whole by pecuniary compensation if rescission is not practicable or possible.

26.     By reason of Defendants' breach and repudiation of the Agreement, Plaintiffs are entitled to immediate rescission of the Agreement.

27.     Plaintiffs are ready, willing and able to return to Defendants all benefits received by Plaintiffs from Defendants under the Agreement in the condition in which they currently exist, and hereby offer to do so.

WHEREFORE, Plaintiffs pray that this Court: (i) order Blixseth and BLX to return to Erickson his interest in Unit 304 free and clear of any liens or encumbrances, (ii) order Casa Captiva to return to BLX the Mexican Property, with the consensual lien in favor of the Liner Firm currently encumbering it; (iii) if these transfers can be made by the parties, order and adjudge that the Agreement be and is hereby rescinded; and (iv) award Plaintiffs their costs, attorney fees and expenses.

## CLAIM TWO
### (Conspiracy and Tortious Interference With Plaintiffs' Contractual Benefits)

28.     After the execution of the Agreement, Defendants Blixseth, BLX and Liner Firm agreed among themselves to prevent Plaintiffs from receiving the benefits of the Agreement for which Plaintiffs bargained by placing a consensual lien on the Mexican Property to the benefit of the Liner Firm.

29.     By reason of the actions of Defendants as set forth above, Plaintiffs in fact have not received the benefits they were promised under the Agreement, and Defendants have made it impossible for Plaintiffs to receive such benefits.

30.     Defendants' actions tortiously and unlawfully interfered with Plaintiffs' economic opportunities and advantages Plaintiffs were otherwise entitled to receive pursuant to the Agreement. Defendants' actions have been intentional, have been taken as a result of conspiracy and agreement between them, constitute an intentional and tortious breach of the duty of good faith and fair dealing owed to Plaintiffs pursuant to the Agreement, and have damaged Plaintiffs as a result.

31.   Defendants activities were undertaken with actual fraud and actual malice as described in §27-1-221, Montana Code Annotated. Plaintiffs are entitled to an award of punitive damages as a result.

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor against Defendants in an amount sufficient to compensate Plaintiffs for their injuries caused by Defendants tortious conduct as described in this Complaint, to award Plaintiffs' punitive damages as permitted under Montana law, together with Plaintiffs' costs, attorney fees and expenses.

### CLAIM THREE
### (Injunction Forbidding Conveyance or Further Encumbrances of Unit 304 or Mexican Property)

32.   Any conveyance or further liens or encumbrances of the Mexican Property or Unit 304 will make it impossible for Plaintiffs to receive the benefits they bargained for under the Agreement, or alternatively for any rescission to occur.

33.   Plaintiffs face the threat of immediate and irreparable injury if the Mexican Property is further liened by Defendants or sold or attempted to be sold by Defendants, in that the Mexican Property is unique and has a value to Plaintiffs which cannot be reasonably determined or compensated by money if Defendants make it impossible for the Agreement to be rescinded.

34.   Plaintiffs have no adequate remedy at law if the Defendants are permitted to maintain the consensual lien now on the Mexican Property in favor of the Liner Law Firm, or if the Mexican Property is not conveyed into trust, as Defendants promised, and the Mexican Property could be sold to third parties.

35.   Plaintiffs are likely to succeed on the merits of their claims in this case.

Casa Captiva, LLC, et al, vs. Edra Blixseth, et al,
Complaint
Page 7

36.     Defendants will not be injured if they are barred from conveying or creating any further liens upon the Mexican Property or Unit 304 pending resolution of Plaintiffs' claims herein and are required to place the Mexican Property into trust as they promised to do in the Agreement.

WHEREFORE, Plaintiffs request this Court to enjoin Defendants from conveying any interest in or creating any additional liens or encumbrances upon the Mexican Property and Unit 304, and, further, entering an order requiring Defendants to specifically perform their promises to place the Mexican Property in trust pending resolution of matters relevant to the Agreement between them.

### DEMAND FOR JURY TRIAL

The Plaintiffs demand trial by a jury of twelve persons.

_____
Tom W. Stonecipher
Tarlow Stonecipher & Steele, PLLC
1705 West College Street
Bozeman, Montana 59715-4913
Telephone:   (406) 586-9714
Facsimile:    (406) 586-9720

**ATTORNEYS FOR PLAINTIFFS**

## AGREEMENT

This Agreement (this "Agreement") is entered into effective July 30, 2008, by and among Casa Captiva, LLC, a Montana limited liability company ("Casa Captiva Buyer"), Blixseth Group, Inc., an Oregon corporation ("Casa Captiva Seller" or "Unit 304 Buyer," as the case may be), Timothy L. Blixseth (the Casa Captiva Seller's Agent"), Edra D. Blixseth (the "Casa Captiva Holder of Possessory Rights"), Bruce Erickson ("Unit 304 Seller"), and Yellowstone Development, LLC, a Montana limited liability company (the "Consenting Party").

### WITNESSETH:

In consideration of the sum of ten and no/100s dollars ($10.00) and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party covenants and agrees as follows:

1.0. **Recitations.**

1.1. **Casa Captiva Seller.** Blixseth Group, Inc., an Oregon corporation ("Casa Captiva Seller") is the beneficial owner through two fideicomiso or Mexican bank trusts (with HSBC Mexico, S.A. and BBVA Bancomer) of the following four lots that encompass "Casa Captiva" (Punta Bella Lots 5 & 6, Lot 15 and Lot 16):

**Legal Description Lots 5 & 6:**
Remaining portion of Lots 5 & 6, Punta Bella, San Jose del Cabo, B.C.S. with Tax ID Number 401-025-002-058 and with an area of 4,979.438 m2 and the construction with an area of 1,297.00 m2, and contained in Public Document No. 51,788, Volume 1003, Dated July 8, 2004, recorded under No. 71, Page 71, Vol. CXC11EP, Sec. 1on October 22, 2004 in the Public Registry of Property for San Jose del Cabo, B.C.S., Mexico.

**Legal Description Lot 15:**
Lot 15, Punta Bella, located within the Rodriguez Lot, San Jose del Cabo, B.C.S., with Tax ID Number 401-025-002-049 and with an area of 1,895.23 m2, and contained in Public Document No. 51,790 Volume 1005, Dated July 8, 2004, recorded under No. 72, Page 72, Vol. CXCIIIEP, Sec. 1on October 22, 2004 in the Public Registry of Property for San Jose del Cabo, B.C.S., Mexico.

**Legal Description Lot 16:**
Lot 16, Punta Bella, San Jose del Cabo, B.C.S., with Tax ID Number 401-025-002-050 and with an area of 927.33 m2, and contained in Public Document No. 51,789, Volume 1004, Dated July 8, 2004, recorded under No. 73, Page 73, Vol. CXCIIIEP, Sec. 1 on October 22, 2004 in the Public Registry of Property for San Jose del Cabo, B.C.S., Mexico.

EXHIBIT A

The Casa Captiva Seller beneficially owns the above described land and improvements (hereinafter referred to as "Casa Captiva") free of any lien, mortgage or any other encumbrance and may freely sell, transfer and convey all rights of ownership and possession, except as may be otherwise provided herein. The Casa Captiva Seller believes the value of Casa Captiva approximates the value of the Unit 304 Seller's interest in Unit 304 (as hereinafter defined) and desires to exchange ownership of Casa Captiva for Unit 304 Seller's interest in Unit 304 on the terms and conditions herein provided.

1.2. **Casa Captiva Holder of Possessory Rights.** Edra D. Blixseth, the "Casa Captiva Holder of Possessory Rights," also believes the value of Casa Captive approximates the value of the Unit 304 Seller's interest in Unit 304, consents to the exchange of ownership of Casa Captiva for Unit 304 Seller's interest in Unit 304 on the terms and conditions herein provided, and agrees to relinquish any and all rights, titles, estates or equities including any possessory rights with respect to Casa Captiva.

1.3. **Casa Captiva Seller's Agent.** Timothy L. Blixseth, the "Casa Captiva Seller's Agent" is the person with authority, under Mexican law, the sign and deliver contracts and agreements with respect to Casa Captiva on behalf of the Casa Captiva Seller. The Casa Captiva Seller's Agent agrees to sign and deliver all documents and perform all acts necessary or desirable to accomplish the intent of the Agreement.

1.4. **Casa Captiva Buyer.** Casa Captiva, LLC, a Montana limited liability company, the "Casa Captiva Buyer," believes the value of Casa Captive approximates the value of the Unit 304 Seller's interest in Unit 304, and desires to obtain ownership of Casa Captiva. The Casa Captiva Buyer has arranged for the Unit 304 Seller to transfer all rights to Unit 304 Seller's interest in Unit 304 to the Unit 304 Buyer.

1.5. **Unit 304 Seller.** Bruce Erickson, as the "Unit 304 Seller," entered into that certain January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums) with respect to:

> Unit 304 of the WM Lodge Condominiums, located on Tract 1 of the Final Plat of Yellowstone Mountain Club, Phase 4, located in Section 12, Township 7 South, Range 2 East, P.M.M., Madison County Montana, together with a 4.3842 percent interest in the common elements, filed in Book 4 of Plays, Page 493, records of Madison County, Montana.

The contractual right to purchase the condominium described above is hereinafter referred to as "Unit 304." The Unit 304 Seller has not received a notice of substantial completion as contemplated in Section 4 of the January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums) but expects to receive such notice. Once a notice of substantial completion is received, a closing shall occur within 30 days thereafter. The Unit 304 Seller owns the January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums) free of any lien, mortgage or any other encumbrance and may freely sell, transfer and convey all rights,

except as may be otherwise provided herein. The Unit 304 Seller believes the value of Casa Captive approximates the value of the Unit 304 Seller's interest in Unit 304 and has made arrangements with the Casa Captiva Buyer to exchange ownership of Unit 304 Seller's interest in Unit 304 for Casa Captiva on the terms and conditions herein provided.

1.6. **Consenting Party.** Yellowstone Development, LLC, a Montana limited liability company, the "Consenting Party," entered into that certain January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums) with respect to Unit 304 as the seller and, as such, is the correct party to consent to an assignment of Unit 304 Seller's interest in Unit 304. The Consenting Party, pursuant to Section 30 of the January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums), consents to the assignment contemplated herein.

## 2.0. Exchange of Property.

2.1. **Casa Captiva.** The Casa Captiva Seller does hereby grant, bargain, sell, assign, transfer and convey to the Casa Captiva Buyer and the Casa Captiva Buyer agrees to purchase and acquire from the Casa Captiva Seller as of the effective date of this Agreement (the "Closing Date"), on the terms and subject to the conditions set forth in this Agreement, all of Seller's right, title and interest in and to Casa Captiva, together with all the improvements thereon and appurtenances thereunto belonging, to have and to hold said described premises unto the Casa Captiva Buyer, the Casa Captiva Buyer's successors and assigns forever, free, clear and discharged of and from all former grants, claims, charges, taxes, judgments, mortgages and other liens or encumbrances whatsoever.

In addition, the Casa Captiva Holder of Possessory Rights does hereby grant, bargain, sell, assign, transfer and convey to the Casa Captiva Buyer as of the effective date of this Agreement (the "Closing Date"), on the terms and subject to the conditions set forth in this Agreement, all of Seller's right, title and interest in and to Casa Captiva.

2.2. **Unit 304.** The Unit 304 Seller does hereby grant, bargain, sell, assign, transfer and convey to the Unit 304 Buyer and the Unit 304 Buyer agrees to purchase and acquire from the Unit 304 Seller as of the effective date of this Agreement (the "Closing Date"), on the terms and subject to the conditions set forth in this Agreement, all of Seller's right, title and interest in and to Unit 304 Seller's interest in Unit 304, , together with all the improvements thereon and appurtenances thereunto belonging, to have and to hold said described premises unto the Unit 304 Buyer, Unit 304 Buyer's successors and assigns forever, free, clear and discharged of and from all former grants, claims, charges, taxes, judgments, mortgages and other liens or encumbrances whatsoever.

In addition, the Consenting Party, pursuant to Section 30 of the January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums), consents to the Unit 304 Seller's sale and assignment of the Unit 304 Seller's interest in Unit 304.

2.3. **Casa Captiva Seller's Election.** At any time prior to June 30, 2009, the Casa Captiva Seller may cause a notice to be received by each party to this Agreement of the election of the Casa Captiva Seller to rescind the transactions contemplated herein and to restore the parties to their respective positions as of July 29, 2008. If such a notice from the Casa Captiva Seller is timely received by all parties, a closing on the rescission of the transactions contemplated herein shall occur on or before July 31, 2009.

If such a notice from the Casa Captiva Seller is not timely received by all parties, then the transactions contemplated herein shall become final, absolute and irrevocable on July 1, 2009.

### 3.0. Purchase Price And Escrow Account.

3.1. **Purchase Price.** The parties to this agreement agree that the value of Casa Captiva approximates the value of the Unit 304 Seller's interest in Unit 304. Consequently, no consideration beyond the exchange of ownership shall be required from any party.

3.1. **Escrow Account.** Because of the existence of the Casa Captiva Seller's election contained in Section 2.3 hereof, the transactions contemplated herein shall not become final, absolute and irrevocable prior to July 1, 2009. Consequently, while all parties are obligated to immediately and expeditiously proceed to convey their interests in Casa Captiva and Unit 304, respectively, those conveyances shall be held in trust prior to the expiration of Casa Captiva Seller's election contained in Section 2.3 hereof, and released from trust for recordation immediately upon the expiration of Casa Captiva Seller's election contained in Section 2.3 hereof.

3.2. **Escrow: Unit 304.** The Unit 304 Buyer shall hold the assignment of the Unit 304 Seller's interest in Unit 304 in trust for the purposes of this Agreement until the earlier to occur of (a) the expiration of Casa Captiva Seller's election contained in Section 2.3 hereof, or (b) the written consent of the Unit 304 Seller allowing the Unit 304 Buyer to proceed with a sale or other disposition of Unit 304.

3.3. **Escrow: Casa Captiva.** The Casa Captiva Seller, the Casa Captiva Seller's Agent, and the Casa Captiva Holder of Possessory Rights agree to sign all documents and perform all acts necessary to fully, faithfully and diligently cause the sale and transfer of all right tile, estate and interest in Casa Captiva to be transferred to the Casa Captiva Buyer. The specific details of the documents to be signed and acts to be performed shall be determined after consultation with Mexican counsel and a Mexican Notary Public but such documents to be signed and acts to be performed may include, without limitation, the following:

> 3.3.1 The Casa Captiva Seller, the Casa Captiva Seller's Agent and the Casa Captiva Holder of Possessory Rights may be required to sign a specific letter of instruction authorizing the transfer of their respective beneficial

rights in the two fideicomiso or Mexican bank trusts (with HSBC Mexico, S.A. and BBVA Bancomer) that own Casa Captiva.

3.3.2 The Casa Captiva Seller's Agent and the Casa Captiva Holder of Possessory Rights may be required to sign a limited power of attorney naming Ben Rosen and Chris Snell to sign documents to be delivered to the two fideicomiso or Mexican bank trusts.

3.3.3 all documents of transfer may need to be executed in the United States but that will probably require such documents to be notarized and apostilled before sending them to Mexico.

3.3.4. The signed transfer documents would be held in by a Mexican Notary Public (perhaps, Javier Mazoy), until the earlier to occur of (a) the expiration of Casa Captiva Seller's election contained in Section 2.3 hereof, or (b) the written consent of the Casa Captiva Seller allowing the Casa Captiva Buyer to proceed with a sale or other disposition of Casa Captiva.

## 4.0. Taxes, Utilities, Liabilities.

4.1.  **Casa Captiva Utilities and Liabilities**. All operating expenses, utilities, taxes and other charges or expenses for Casa Captiva shall be prorated to the effective date of this Agreement.

4.2.  **Casa Captiva Transfer Taxes**. All taxes or charges assessed for the sale or transfer of Casa Captiva or an interest therein shall be the responsibility of the Casa Captiva Buyer.

4.3.  **Unit 304 Utilities and Liabilities**. All operating expenses, utilities, taxes and other charges or expenses for Unit 304 shall be prorated to the effective date of this Agreement.

4.4.  **Unit Transfer Taxes**. All taxes or charges assessed for the sale or transfer of Unit 304 or an interest therein shall be the responsibility of the Unit 304 Buyer.

## 5.0. Representations And Warranties.

5.1.  **Casa Captiva Title**. The Casa Captiva Seller represents and warrants that it has good and clear ownership of Casa Captiva, free and clear of all liens, claims, security interests, charges and other encumbrances of any kind or nature except only for the fact that foreign ownership of the Casa Captiva is required, under Mexican law, to held in a fideicomiso or Mexican bank trust and, in the case of Casa Captiva, is owned by the two fideicomiso or Mexican bank trusts (with HSBC Mexico, S.A. and BBVA Bancomer).

5.2.    **Unit 304 Title.** The Unit 304 Seller represents and warrants that he has good and clear ownership of the Unit 304 Seller's interest in Unit 304, free and clear of all liens, claims, security interests, charges and other encumbrances of any kind or nature except only for the fact that the Unit 304 Seller has not received a notice of substantial completion as contemplated in Section 4 of the January 17, 2007 Real Estate Purchase and Sale Agreement (Warren Miller Lodge Condominiums) but expects to receive such notice. Once a notice of substantial completion is received, a closing shall occur within 30 days thereafter.

5.3.    **As is Condition.** Both Casa Captiva and Unit 304 are being sold in "AS IS" condition, on a "WHERE IS" basis and "WITH ALL FAULTS" as of the Closing Date. EACH OF THE CASA CAPTIVE BUYER AND THE UNIT 304 BUYER HEREBY ACKNOWLEDGE AND AGREE THAT NEITHER THE CASA CAPTIVA SELLER NOR THE UNIT 304 SELLER HAS MADE ANY REPRESENTATION OF ANY TYPE, KIND, CHARACTER OR NATURE, WHETHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, AND WITHOUT IN ANY WAY LIMITING THE FOREGOING, EACH OF THE CASA CAPTIVA SELLER AND THE UNIT 304 SELLER EXPRESSLY DISCLAIM ANY EXPRESS WARRANTY, IMPLIED WARRANTY OF HABITABILITY, IMPLIED WARRANTY OF MERCHANTABILITY OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. UNDER NO CIRCUMSTANCES SHALL EITHER THE CASA CAPTIVA SELLER OR THE UNIT 304 SELLER BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES IN ANY WAY.

5.4.    **Casa Captiva Litigation.** The Casa Captiva Seller, the Casa Captiva Seller's Agent, and the Casa Captiva Holder of Possessory Rights represent and warrant that there is no action, suit or proceeding pending or, to the best of their respective knowledge, threatened which might result in any adverse change in the Casa Captiva or the possession, use or enjoyment thereof by the Casa Captiva Buyer.

5.5.    **Unit 304 Litigation.** The Unit 304 Seller represents and warrants that there is no action, suit or proceeding pending or, to the best of his knowledge, threatened which might result in any adverse change in the Unit 304 or the possession, use or enjoyment thereof by the Unit 304 Buyer.

5.6    **Eminent Domain.** To the best of each of the Casa Captiva Seller's knowledge and the unit 304 Seller's knowledge, there are no pending or threatened governmental proceedings in eminent domain, for rezoning, for building moratorium or otherwise, which would affect either Casa Captiva or Unit 304 or any portion thereof, nor any facts in existence which may give rise to any such action or proceeding.

5.7    **Public Improvements.** To the best of each of the Casa Captiva Seller's knowledge and the unit 304 Seller's knowledge, there are no plans or efforts by any government agency to widen, modify or realign any street or highway providing access to either Casa Captiva or Unit 304 and there are no intended public improvements or special assessments affecting either Casa Captiva or Unit 304 which will result in any charge being levied or assessed against it or in the creation of any lien against it.

5.8    **Foreign Person.** The Unit 304 Seller is not a "foreign person," "foreign partnership," "foreign trust" or "foreign estate" as those terms are defined in Section 1445 of the Internal Revenue Code.

5.9    **Casa Captiva Environmental Matters.** To the best of the Casa Captive Seller's knowledge, there does not now exist, and the Casa Captiva Seller's operations at Casa Captiva are not likely to cause there to exist, any release, discharge, spillage, uncontrolled loss, seepage, leeching or filtration of any hazardous wastes or hazardous substances. The Casa Captiva Seller is in compliance with all laws and regulations imposing record-keeping, maintenance, testing, storage, transportation, use, generation, collection, treatment, recovery, removal, discharge, disposal, inspection, notification and reporting requirements with respect to hazardous substances or wastes

5.10    **Commitments.** Neither the Casa Captiva Seller nor the Unit 304 Seller has entered into any other contracts for the sale of all or any part of either Casa Captiva or Unit 304, nor as of the effective date of this Agreement will there be any first rights of refusal or options to purchase either Casa Captiva or Unit 304 or any part thereof.

6.0    **Entire Agreement.** This Agreement comprises the entire agreement between the Parties with respect to the Parties' role in the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement may be amended only by an agreement in writing signed by each of the Parties.

7.0    **Miscellaneous.**

7.1.    **Benefit and Binding Effect of the Agreement.** This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective heirs, executors, administrators, subrogees, subrogors, representatives, successors, employees, agents and assigns.

7.2.    **Counterparts.** This Agreement may be executed in counterparts, including those forwarded by facsimile transmission, and when each Party has signed and delivered to the other at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one agreement, which shall be binding upon and effective as to all Parties. The facsimile signature of any Party to this agreement shall be deemed to be effective to bind such Party to the terms of this Agreement.

7.3.    **Headings.** The headings, titles, and captions used herein are intended for convenience or reference only, and are not intended to and shall not in any way enlarge, define, limit, extend or describe the rights or obligations of the parties or affect the meaning or construction of this Agreement, or any provision hereof.

7.4  **Brokerage.** Each party acknowledges and represents to each other that no pary has worked with or used a broker in connection with the transactions contemplated herein.

7.5  **Risk of Loss.** On the August 1, 2008, the risk of loss of or damage shall pass to the Casa Captiva Buyer and the Unit 304 Buyer, respectively.

7.6  **Governing Law.** This Agreement shall be deemed to have been made and executed in the State of Montana and the validity, construction, interpretation, effect and enforcement thereof shall be governed by the laws of the State of Montana. However, the parties acknowledge that Mexican law governs and controls over the specific manner and means required to transfer ownership to a citizen of the United States of Casa Captiva.

7.7  **Severability.** The various terms, provisions and covenants herein contained shall be deemed to be separable and severable, and the invalidity or unenforceability of any of them shall in no manner affect or impair the validity or enforceability of the remainder thereof.

7.8  **Survival.** All of the terms, covenants, conditions, representations, warranties, indemnities and agreements contained in this Agreement shall survive and continue in force and effect and shall be enforceable after the effective date hereof.

IN WITNESS WHEREOF, the Parties have executed this Agreement effective as of the 30th day of July 2008.

**"Casa Captiva Buyer"**

**Casa Captiva, LLC**
a Montana limited liability company


By:_____
    Bruce Erickson, Manager

**"Casa Captiva Seller" or "Unit 304 Buyer"** (as the case may be)

Blixseth Group, Inc.,
an Oregon corporation


By:_____
    Timothy L. Blixseth, President


**"Casa Captiva Seller's Agent"**

-8-

By: _____
Timothy L. Blixseth

"Casa Captiva Holder of Possessory Rights"

By: _____
Edra D. Blixseth

"Unit 304 Seller"

By: _____
Bruce Erickson

"Consenting Party"

**Yellowstone Development, LLC**
a Montana limited liability company

By and through its Manager
Blixseth Group, Inc.,
an Oregon corporation

By: _____
Timothy L. Blixseth, President

-9-

By: _____
    Timothy L. Blixseth

"Casa Captiva Holder of Possessory Rights"

By: _____
    Edra D. Blixseth

"Unit 304 Seller"

By: _____
    Bruce Erickson

"Consenting Party"

**Yellowstone Development, LLC**
a Montana limited liability company

By and through its Manager
Blixseth Group, Inc.,
an Oregon corporation

By: _____
    Timothy L. Blixseth, President

| | | | |
|---|---|---|---|
| Date: 1/20/2009 | Madison County District Court | NO. | 0000191 |
| Time: 10:56 AM | Receipt | | Page 1 of 1 |

Received of: Tarlow, John H. (attorney for Casa Captiva, Llc)                                $    120.00

One Hundred Twenty and 00/100 Dollars

| | Amount |
|---|---|
| Case: DV-29-2009-0000006-BC    Plaintiff: Casa Captiva, Llc, etal. vs. Edra D. Blixseth, etal. | |
| Commencement of Action or Proceedings / Invalidity | 120.00 |
| **Total:** | **120.00** |

Check: 18079   Bank: American Bank
Payment Method:  Check
Amount Tendered:            120.00

Bundy Bailey, Clerk of District Court

By: _____
      Deputy Clerk

Clerk: BBAILEY
Duplicate